## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GRETA SEMSROTH, et al., )<br>)<br>              **Plaintiffs,** )<br>)<br>v. )<br>)<br>CITY OF WICHITA, et al., )<br>)<br>              **Defendants.** )<br>_____) | **CIVIL ACTION**<br><br>**No. 06-2376-KHV** |

### MEMORANDUM AND ORDER

Greta Semsroth, Kim Warehime, Sara Voyles and Heather Plush bring suit individually and on behalf of similarly situated individuals against the City of Wichita, Kansas and Norman Williams, Chief of Police of the Wichita Police Department. Plaintiffs allege (1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and (2) denial of equal protection under the Fourteenth Amendment in violation of 42 U.S.C. § 1983. This matter is before the Court on Defendant Williams' Motion To Dismiss (Doc. #19) filed April 16, 2007. For reasons stated below, the Court sustains the motion.

### Legal Standards

Defendant seeks dismissal of the complaint under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted. On such a motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiff. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007); see also Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (plaintiff need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved). In other words, plaintiff must allege sufficient facts to state a claim which is plausible – rather than merely conceivable – on its face. Bell Atlantic Corp., 127 S. Ct. at 1974.

## Factual Background

Plaintiffs' complaint is summarized as follows:

The Wichita Police Department ("the Department") is comprised of two categories of officers: commissioned and non-commissioned. Greta Semsroth is a sworn officer in the Department.[1] Kim Warehime and Sara Voyles[2] are commissioned officers in the Department. Heather Plush is a former commissioned officer in the Department. Norman Williams is Chief of Police for the City of Wichita (the "City") and the Department. Chief Williams administers the policies and procedures of the Department and possesses final policymaking authority on personnel decisions in the Department.

The City has a longstanding practice of gender discrimination resulting from policies and procedures of the Department. Generally, City supervisors have exhibited intentional malice, reckless disregard or deliberate indifference to the rights of female officers and have thus limited the career progression of females compared to males in the Department. The Department has adopted subjective procedures by which it awards salary increases, conducts promotion interviews and grants overtime opportunities. These procedures disproportionately impact female officers, and reports of such impact are routinely ignored or handled through inconsistent remedial measures. Female officers are targeted

---

[1] The complaint does not indicate whether a sworn officer is a commissioned or non-commissioned officer.

[2] The complaint lists Voyles' first name as both "Sara" and "Sarah." The Court will use "Sara," as reflected in the caption.

for discipline when reporting illegal actions of peers and supervisors, while male officers are not.  This unequal treatment has existed since at least 1996.[3]  Chief Williams never investigated any of plaintiffs' complaints of unequal treatment.

In addition to these general allegations, plaintiffs each set forth individualized allegations of discrimination which include allegations of retaliation stemming from a prior lawsuit which plaintiffs filed against defendants.  See Semsroth v. City of Wichita, No. 04-1245-MLB (D. Kan.).

**I.    Greta Semsroth**

Semsroth has specifically experienced the following acts of discrimination: (1) the Department took no action against her male field training officer who asked her on a date and then harassed her when she declined; (2) on multiple occasions, the Department did not award her for her conduct when it awarded male officers for similar conduct; (3) in June of 2002, officers refused to relieve her during a shoot-out when all male officers were replaced with back-up officers and the Department did not provide her with mandatory Critical Incident Stress Management Therapy after the shoot-out; (4) in April of 2003, an officer left taunting pictures and a note in her mailbox and the Department did not discipline the officer; (5) in October of 2003, an officer failed to provide her proper back-up and a supervisor refused to take corrective action against the officer; (6) she was reassigned to a "banishment beat" after she reported unequal treatment to Wichita's equal employment officer in October and

---

[3] Several allegations of the complaint detail a report of Dr. Robert Bardwell which provides a statistical analysis of gender disparities within the Department.  See First Amended Class Action Complaint (Doc. #3) filed December 6, 2006 ¶¶ 47-59.  Because the allegations are not directly relevant to Chief Williams' conduct and their essence is sufficiently captured in the general allegations of discrimination highlighted above, the Court does not set forth the allegations detailing Dr. Bardwell's report.

November of 2003;[4] (7) she received negative remarks in her personnel file regarding conflicts with other officers when similarly situated male officers did not receive such remarks;[5] (8) in May of 2004, defendants did not discipline a recruit officer who, when riding with plaintiff, began squirming and said, "I'm adjusting myself.  Some of the guys told me I need to watch what I say, but I think the girls like it;" (9) in July or August of 2005, the City refused to grant plaintiff's request for a short break from her employment and required her to undergo a fitness for duty test despite the fact that she did not have a deficient performance record; and (10) the doctor who administered plaintiff's fitness for duty test commented that she was one of the female officers who had sued the City.

## II.    Kim Warehime

Warehime has specifically experienced the following acts of discrimination: (1) in February of 2001, a male officer attempted to discuss sexual topics with her, claimed that he had raped another woman and exposed his erect penis to plaintiff, but when she reported this conduct, her supervisors did not investigate and threatened her against pursuing criminal charges;[6] (2) in October of 2003, in front of the squad, a male officer implied that plaintiff had a disease, but the officer was not disciplined, while in contrast, in January of 2004, plaintiff was reprimanded with a charge of conduct unbecoming an officer for stating that a male officer had a disease;[7] (3) a supervisor did not discipline officers who damaged a police cruiser and attempted to cover it up;[8] (4) after a meeting with other female officers

---

[4]    The complaint does not reveal who reassigned Semsroth.

[5]    The complaint does not reveal who placed these remarks in the personnel file.

[6]    The complaint does not reveal to whom Warehime reported this conduct.

[7]    The complaint does not reveal who reprimanded Warehime.

[8]    The complaint does not allege that Warehime ever damaged a police cruiser, and it is
(continued...)

-4-

to discuss equal treatment, her supervisors harshly questioned plaintiff about the purpose of the meeting; (5) she was denied an emergency transfer from her unit when at least five similarly situated male officers were granted transfers within the same general time period;[9] (6) plaintiff was denied an SRO position at least three times despite excellent interviews, and the position given to a similarly situated or less qualified male officer, and plaintiff has been denied community policing positions;[10] (7) in April of 2005, plaintiff developed a community project which was denied and delayed, and credit for the project was given to similarly situated male officers in July of 2005;[11] and (8) in June of 2005, after plaintiff filed an internal discrimination complaint, a position which she had received and for which she was qualified was taken away from her.[12]

### III. Sara Voyles

Voyles has specifically experienced the following acts of discrimination: (1) while plaintiff was pregnant, male officers made "fat jokes" about her, and here supervisor verbally reprimanded her when she complained about this conduct; (2) in October of 2001, although Department policy prohibits quotas for traffic tickets, she was assigned to desk work because she did not write enough traffic tickets when

---

[8](...continued)
unclear whether she complains that she was treated differently for conduct similar to that of the male officers.

[9] The complaint does not reveal who was responsible for authorizing such transfers.

[10] The complaint does not reveal what an SRO position is or who was responsible for assigning SRO or community policing positions.

[11] The complaint does not reveal who denied and delayed the project, or who gave credit for the project to the male officers.

[12] The complaint does not reveal who took away the position.

two similarly situated male officers who also did not write enough traffic tickets were not disciplined;[13] (3) in 2002, she was reprimanded for attending only one community meeting when several male officers who did not attend the requisite two community meetings were not disciplined;[14] (4) in December of 2004, in accordance with City policy and procedure, plaintiff's merit dates were adjusted because she gave birth to a child; and (5) in June of 2005, plaintiff attempted to begin light duty work in the Department's gang/felony unit, but the chain of command refused to allow her to work in the unit because she had complained about the supervisor.[15]

### IV.   Heather Plush

Plush has specifically experienced the following acts of discrimination: (1) in May of 2004, she was dismissed from a crime scene because she was no longer of any use when no male officers were dismissed;[16] (2) also in May of 2004, her supervisor verbally reprimanded her for failing to draw her gun at a crime scene, but did not reprimand her male partner who also failed to draw his gun at the scene; (3) a supervisor reprimanded her for seeking clarification at a crime scene by informing her that it is not a woman's place to question a supervisor, and male officers were not similarly reprimanded; (4) Chief Williams denied her request to transfer from her unit because of a hostile work environment, did not investigate her complaint and stated that "a hostile work environment cannot exist after one week;" (5) within weeks of filing suit against the City, three complaints were filed against Plush for conduct which was at least seven months old and did not warrant disciplinary action; and (6) between May and

---

[13]   The complaint does not reveal who assigned Voyles to desk work.

[14]   The complaint does not reveal who reprimanded Voyles.

[15]   The complaint does not reveal who constituted the chain of command which refused to allow Voyles to work in the gang/felony unit.

[16]   The complaint does not reveal who dismissed Plush from the crime scene.

July of 2005, plaintiff tested for a community policing position but did not receive it because the City had erected difficult barriers against her in retaliation for her lawsuit.

Plaintiffs bring suit individually and on behalf of a class of similarly situated female officers. Under Title VII, plaintiffs claim that based on their gender, defendants' conduct constitutes disparate treatment, disparate impact, retaliation and pattern and practice discrimination. Under Section 1983, plaintiffs claim that by failing to enforce City policies and regulations in an equal manner, Chief Williams intentionally denied them equal protection under the Fourteenth Amendment through his final policy making authority on personnel decisions in the Department.

## Analysis

Chief Williams argues that the Court should dismiss plaintiffs' official capacity claims against him as redundant of the claims against the City. Chief Williams further argues that the Court should dismiss plaintiffs' individual capacity claims against him under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

**I.    Plaintiffs' Official Capacity Claims Against Chief Williams**

Chief Williams argues that plaintiffs' official capacity claims should be dismissed under Rule 12(b)(6) because they are redundant of the claims against the City.[17] The Supreme Court has recognized that "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly for damages and injunctive or declaratory

---

[17]    In their response, plaintiffs state that they have not sued Chief Williams in his official capacity. See Plaintiffs' Response To Defendant Williams' Motion To Dismiss ("Plaintiffs' Response") (Doc #22) filed May 9, 2007 at 3 n.1. The Court notes, however, that the complaint states that Chief Williams "is named in his individual and official capacity." First Amended Class Action Complaint (Doc. #3) ¶ 17. Further, the caption of the complaint lists as a defendant "CHIEF NORMAN WILLIAMS individually and in his official capacity." Id. at 1. Out of an abundance of caution, the Court will consider Chief Williams' official capacity arguments.

relief." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985). Because official-capacity suits are simply "another way of pleading an action against an entity of which an officer is a agent," the official capacity claims against Chief Williams are really claims against the City. <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 n.55 (1978). Here, plaintiffs have sued the City directly, and their official capacity claims against Chief Williams – an officer of the City – are therefore redundant. Accordingly, the Court finds that such claims should be dismissed under Rule 12(b)(6). <u>See</u> <u>Burns v. Bd. of County Comm'rs of the County of Jackson</u>, 197 F. Supp.2d 1278, 1296-97 (D. Kan. 2002) (redundant official-capacity claims dismissed as matter of judicial economy); <u>Sims v. Unified Gov't of Wyandotte County/Kansas City, Kan.</u>, 120 F. Supp.2d 938, 944 (D. Kan. 2000) (duplicative official-capacity claims afford no additional relief and should be dismissed).

**II.     Plaintiffs' Individual Capacity Claims Against Chief Williams**

In his individual capacity, Chief Williams argues that the Court should dismiss plaintiffs' Title VII and equal protection claims for failure to state a claim on which relief can be granted under Rule 12(b)(6).

**A.     Title VII**

Chief Williams argues that plaintiffs' Title VII claim against him in his individual capacity should be dismissed under Rule 12(b)(6) because the Tenth Circuit does not recognize individual capacity claims under Title VII.[18] The Tenth Circuit has noted that "the language and structure of

---

[18]    In their response, plaintiffs state that they have not sued Chief Williams under Title VII in his individual capacity. <u>See</u> <u>Plaintiffs' Response</u> (Doc #22) at 3 n.1. The Court notes, however, that plaintiffs' Title VII claim states collective allegations against Chief Williams and the City. <u>See</u> <u>First Amended Class Action Complaint</u> (Doc. #3) ¶¶ 100-02 ("Defendants' conduct violates . . . Title VII"). Out of an abundance of caution, the Court will consider Chief Williams' individual capacity Title VII arguments.

amended Title VII continue to reflect the legislative judgment that statutory liability is appropriately borne by employers, not individual supervisors." Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996). Thus, the Tenth Circuit continues to adhere to the rule that individual capacity suits against supervisors are inappropriate under Title VII. See id. (citing Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993)); see also Ledbetter v. City of Topeka, 112 F. Supp.2d 1239, 1243 (D. Kan. 2000) (Title VII suit must proceed against supervisor only in official capacity). The Court therefore finds that plaintiffs' Title VII claim against Chief Williams in this individual capacity should be dismissed for failure to state a claim under Rule 12(b)(6).

**B.    Equal Protection**

Chief Williams argues that plaintiffs' equal protection claim against him in his individual capacity should be dismissed under Rule 12(b)(6) because (1) plaintiffs have not sufficiently alleged his personal participation in any constitutional violation and (2) he is entitled to qualified immunity.

**i.    Personal Participation**

Chief Williams argues that the complaint does not sufficiently allege his personal participation under Section 1983.[19] Under Section 1983, government officials are not vicariously liable for constitutional violations of subordinates. Moore v. Bd. of County Comm'rs of the County of Leavenworth, 470 F. Supp.2d 1237, 1256 (D. Kan. 2007) (citing Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006)). To state a claim under Section 1983, plaintiffs must allege defendant's

---

[19]   Section 1983 provides in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

direct personal responsibility for the claimed deprivation of a constitutional right. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006). In other words, personal participation is an essential allegation in a Section 1983 claim, and "[f]ailure to allege that a government official was personally involved in violating [plaintiffs'] constitutional rights is fatal to [such] claim." Treff v. Barnes, 91 F.3d 160 (Table), 1996 WL 378857, at *1 (10th Cir. July 8, 1996) (citing Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996)). Where defendant is a supervisor, plaintiff must establish an affirmative link between defendant's conduct and the alleged constitutional violations of his subordinates by alleging his direct participation, his exercise of control or direction or his failure to supervise. Serna, 455 F.3d at 1152; see also Jenkins v. Wood, 81 F.3d 988, 995 (10th Cir. 1996) (supervisor liability requires personal direction of violation or knowledge of and acquiescence in continuation of violation). Failure to supervise may constitute acquiescence in a constitutional violation only where defendant is charged with a duty to supervise under state or local law. Serna, 455 F.3d at 1154 (citing Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988)).

### a. Plaintiffs' Allegations

Plaintiffs do not allege that Chief Williams directly participated in any unconstitutional act or personally directed the allegedly unconstitutional acts of his subordinates; their claim is premised on Chief Williams' knowledge of alleged discrimination and his acquiescence to such discrimination. Essentially, plaintiffs present a failure to supervise claim which is limited to the allegations that "Williams has handled [Plush's hostile work environment complaints] by simply stating 'a hostile work environment cannot exist after one week,'" and "Williams never interviewed or investigated the [hostile work environment] allegations raised by Plaintiff Plush nor any of the plaintiffs and Class." First Amended Class Action Complaint (Doc. #3) ¶ 95. Generally, the allegation of

complete inaction in the face of known discrimination is sufficient to allege supervisor liability under Section 1983.  See Fye v. Okla. Corp. Comm'n, 175 Fed. Appx. 207, 211 (10th Cir. 2006) (knowledge and subsequent inaction sufficient to establish supervisor liability under Section 1983).

Here, when taken as true, the allegation that Chief Williams dismissed Plush's hostile work environment complaint by stating that such environment could not exist sufficiently avers Chief Williams' knowledge of discrimination and his failure to respond to such discrimination.  In contrast, however, the complaint does not allege that the remaining plaintiffs ever complained of discrimination to Chief Williams or that he might have otherwise known of any discrimination against them.  Absent such allegation, the complaint fails to establish supervisor liability under Section 1983.  Accordingly, with regard to all plaintiffs except Plush, the Court sustains the motion to dismiss the equal protection claim against Chief Williams in his individual capacity for failure to state a claim.

### b.     Issue Preclusion

Although the complaint appears to sufficiently alleges Chief Williams' liability to Plush under Section 1983, Chief Williams argues in reply that the issue whether he ignored Plush's complaints of discrimination is barred by the summary judgment ruling in Semsroth v. City of Wichita, No. 04-1245-MLB (D. Kan.) ("Semsroth I").[20]  In Semsroth I, the Honorable Monti L. Belot considered

---

[20] This issue preclusion argument, raised for the first time in the reply, constitutes a new argument.  Generally, a party should be given the opportunity to respond to new material, including both evidence and legal argument, offered in a reply brief.  Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005).  The proper course of action for the nonmoving party to respond to new materials introduced through a reply brief is to seek leave to file a surreply.  Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006).  Where the nonmoving party fails to file such motion after ample opportunity to do so, the Court may properly consider any new materials offered in the moving party's reply.  See id. (month and a half between filing of reply and court decision sufficient opportunity for nonmoving party to seek leave to file surreply).  Here, in almost two months since defendant filed his reply, plaintiffs have not requested leave to file a surreply to the issue
(continued...)

the claim that when Plush complained of a hostile work environment and applied for a transfer because of such discrimination, Chief Williams stated that "a hostile work environment cannot exist after one week." Pretrial Order (Doc. #142) in Semsroth I at 25; see also Semsroth I, 2007 WL 1246223, at *37 ("In the parties' pretrial order, plaintiffs [allege that] Williams was aware of allegedly discriminatory practices . . . and ignored them."). Judge Belot noted as follows:

> Plush has not spoken directly to Chief Williams about her concerns. . . . Plush stated there was nothing unusual or unsupportive in Chief Williams' demeanor about the policy against harassment and discrimination and Chief Williams encouraged people to make reports of discrimination and harassment. Plush never made a complaint of discrimination to anyone in the City's personnel office [or the Department's] equal employment opportunity office. Plush did not hear Chief Williams say that a hostile work environment cannot be created in one week. Plush testified that she does not know why she sued Chief Williams personally but that her concern with Chief Williams is that her allegations have occurred under his supervision.

Semsroth I, 2007 WL 1246223, at *18. On the issue of Chief Williams' knowledge of and ignorance toward discrimination against plaintiffs including Plush, Judge Belot found that "[p]laintiffs as a group have failed to create a genuine issue of material fact with regard to Chief Williams' personal involvement in any of the alleged acts of discrimination asserted by plaintiffs. In addition, plaintiffs have not shown how Chief Williams' conduct was intentionally or purposefully discriminatory." Id. at *37. With specific regard to Plush's equal protection claim, Judge Belot found that "Plush has failed to create a genuine issue of material fact with respect to Chief Williams' personal involvement in any discrimination against her which violated her equal protection rights." Id. at *39.

The doctrine of issue preclusion attaches when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. B-S Steel

---

[20](...continued)
preclusion argument. The Court will therefore consider the argument.

of Kan., Inc. v. Tex. Indus., Inc., 439 F.3d 653, 662 (10th Cir. 2006) (citing Arizona v. California, 530 U.S. 392, 414 (2000)).  To properly invoke issue preclusion, defendants must show that (1) the issue previously decided is identical to the issue presented in the current action; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is raised was a party, or in privity with a party, to the prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  Id.  The doctrine of issue preclusion serves to prevent the unnecessary expense and vexation of repetitious litigation, conserve judicial resources and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.  Park Lake Res. L.L.C. v. U.S. Dep't of Agric., 378 F.3d 1132, 1135 (10th Cir. 2004) (citing Montana v. United States, 440 U.S. 147, 153-54 (1979)).

Here, the elements of issue preclusion are easily met.  With regard to the first element – identical issues in both actions – Plush has presented an identical equal protection allegation against Chief Williams in this case and in Semsroth I.  As noted above, the equal protection claim in this case hinges on the allegation that Chief Williams knew of Plush's hostile work environment complaint but ignored the complaint.  As set forth in the Semsroth I pretrial and summary judgment orders, Plush made the same allegation against Chief Williams as part of her equal protection claim in the first action.  Because Plush seeks to relitigate an identical issue, the first element of issue preclusion is satisfied.

With regard to the second element – final adjudication of the first action on the merits – Judge Belot's summary judgment ruling constitutes a final adjudication on the merits for purposes of issue preclusion.  See Spiess v. Meyers, 483 F. Supp.2d 1082, 1090 (D. Kan. 2007) (dismissal on summary judgment constitutes adjudication on merits for purposes of issue preclusion); Coffman v. Veneman, No. CIV-02-1625-F, 2005 WL 1356485, at *2 (W.D. Okla. June 7, 2005) (summary judgment appropriate

vehicle for determining issue preclusion); Augustine v. Adams, 88 F. Supp.2d 1166, 1172 (D. Kan. 2000) (summary judgment is final judgment on merits). With regard to the third element – identity between the parties – the parties in both this case and Semsroth I, including Plush and Chief Williams, are identical.

With regard to the final element – full and fair opportunity to litigate the issue – in the context of a motion for summary judgment, a party is given a full and fair opportunity to litigate if he or she is allowed to submit evidence to defeat the motion for summary judgment. Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1211 (10th Cir. 2001). Here, Judge Belot's summary judgment order indicates that Plush had ample opportunity to submit evidence in defense of the motion for summary judgment. Specifically, Plush enjoyed the opportunity to introduce evidence on the issue of Chief Williams' involvement in the harassment and discrimination which she allegedly suffered. As noted above, Plush testified in Semsroth I regarding Chief Williams supportive demeanor toward employees who reported discrimination and harassment in the Department. She testified that she had not complained of discrimination directly to Chief Williams and that she had sued him only because of his supervisory position. On the record evidence, Judge Belot found that Plush had not presented evidence necessary to establish Chief Williams' personal participation in the alleged equal protection violation. Under these circumstances, the Court finds that the fourth element of issue preclusion is satisfied.

Because all elements necessary to apply issue preclusion are present in this case, the Court finds that Plush may not relitigate the issue whether Chief Williams knew of her hostile work environment complaint and subsequently ignored the complaint. In Semsroth I, Judge Belot determined that Plush could not support such an allegation and entered summary judgment in favor of Chief Williams. That

finding compels the Court in this case to disregard Plush's identical allegation that Chief Williams knew of her hostile work environment complaint and ignored it. Without such allegation, Plush has not alleged Chief Williams' personal participation in any constitutional violation and she therefore has not stated a claim under Section 1983. Accordingly, the Court sustains the motion to dismiss Plush's equal protection claim against Chief Williams in his individual capacity.

### ii. Qualified Immunity

Chief Williams argues that he is entitled to qualified immunity as a government official. In light of the Court's holding above, that issue is moot.

**IT IS THEREFORE ORDERED** that Defendant Williams' Motion To Dismiss (Doc. #19) filed April 16, 2007 be and hereby is **SUSTAINED**.

Dated this 20th day of July, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge