Lawrence W. Williamson, Jr.
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:  (913) 535-0736
E: l.williamson@williamsonfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GRETA SEMSROTH et al., | ) Case No.:06-2376 |
| | ) |
| Plaintiff, | ) PLAINTIFFS' RESPONSE TO |
| | ) DEFENDANT'S MOTION FOR SUMMARY |
| vs. | ) JUDGMENT |
| | ) |
| CITY OF WICHITA, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES  NOW,  Greta  Semsroth,  Sara  Voyles,  and  Kim  Warehime,  plaintiffs,  and responds as follows:

## I.        INTRODUCTION

There are no factual disputes for the questions presented in this motion.  In this motion the court is called to answer the following questions:

1)        Whether the hiring of an additional executive at a time that defendant claimed to

terminate plaintiff because of "budgetary concerns" raises a triable issue; and

2)     Whether delaying training to an African-American employee while training a Caucasian employee is an adverse action.[1]

## II.   DEFENDANT'S FACTS

1.  Uncontroverted.

2.  Uncontroverted.

3.  Uncontroverted.

4.  Uncontroverted.

5.  Uncontroverted.

6.  Controverted. Lt. Easter told Voyles that that there was a position on the Sixth Floor in the juvenile section.  He told her that she could "come up there" and work juvenile cases. (Voyles Dep. 16:19-17:9; 25:24-27:10) Nothing was mentioned regarding Allred.

7.  Controverted.  Lt. Easter told Voyles that that there was a position on the Sixth Floor in the juvenile section.  He told her that she could "come up there" and work juvenile cases. (Voyles Dep. 16:19-17:9; 25:24-27:10)

8.  Uncontroverted.

9.  Uncontroverted.

10. Uncontroverted.

11. Controverted. The entire conversation included: Captain Allred told Sara Voyles that he had concerns about her being anywhere on the sixth floor because Lieutenant Bohannon was there, in a different division and he also mentioned the fact that Voyles had filed a lawsuit. At that time Voyles was told that she was still probably going to go up north and clerk with Captain Norris at Patrol North.  She was also told that that Captain Speer had a place for her to BOF at Patrol South. They also told her that she couldn't stay out east to BOF because it wasn't a secure facility. (Voyles Dep. 17:10-22)

12. Uncontroverted.

---

[1] Plaintiff abandons her Title VII retaliation claims and her state law retaliation claims.  Thus, the only issue before this court is plaintiff's Title VII discrimination claim.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

13. Uncontroverted.

14. Uncontroverted.

15. Uncontroverted.

16. Uncontroverted.

17. Uncontroverted.

18. Uncontroverted.

19. Uncontroverted.

20. Uncontroverted.

21. Uncontroverted.

22. Uncontroverted.

23. Uncontroverted.

24. Uncontroverted.

25. Uncontroverted.

26. Uncontroverted.

27. Uncontroverted.

28. Uncontroverted.

29. Uncontroverted.

30. Controverted. However, once she was there, she learned that her Lt. had informed the doctor that she was a plaintiff in a lawsuit and that the doctor was to conduct a fitness for duty test on Semsroth. (Semsroth Dep. II at 28:17-29:19; 30:6-22).

31. Uncontroverted.

32. Uncontroverted.

33. Uncontroverted.

34. Uncontroverted.

35. Controverted as incomprehensible.  This "fact" states that a statement was not mentioned again. However, it does not state when the first time actually occurred.

36. Uncontroverted.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

37. Uncontroverted.

38. Controverted at to hearsay.

39. Controverted. Greta, during her visit with the doctor learned that Lt. Bannister had informed the doctor that she was a plaintiff in a lawsuit and that the doctor was to conduct a fitness for duty test on Semsroth. (Semsroth Dep. II at 28:17-29:19; 30:6-22).

40. Uncontroverted.

41. Uncontroverted.

42. Uncontroverted.

43. Uncontroverted.

44. Uncontroverted.

45. Uncontroverted.

46. Uncontroverted.

47. Uncontroverted.

48. Uncontroverted.

49. Uncontroverted.

50. Uncontroverted.

51. Controverted. Warehime handed her complaint to Sgt. Quick and ultimately the complaint was addressed by Susan Leiker. (Warehime Dep. 12:11-22; 21:22-25; 32:12-15).

52. Uncontroverted.

53. Uncontroverted.

54. Controverted. Warehime filed the complaint because she was tired of women not getting an opportunity to pursue ideas, while males were. Thus, she made an internal sex discrimination complaint  (Deposition Exhibit 2; Warehime 17:23-18:3)

55. Uncontroverted.

56. Uncontroverted.

57. Uncontroverted.

58. Uncontroverted.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

59. Uncontroverted.

60. Uncontroverted.

61. Uncontroverted.

62. Uncontroverted.

63. Controverted. Warehime testified that the position was taken from her the very next day in a meeting with Captain Nelson after filing the Complaint. (Warehime Dep. at 7:23-8:6, 10:1-24; 23:22-25)

64. Uncontroverted that Nelson does not recall the conversation with Warehime.

65. Controverted to the extent that this fact implies that Warehime was not told that she could have the position prior to having it stripped away.

66. Uncontroverted.

## B. ADDITIONAL STATEMENT OF FACTS

1.      Beat 39 is referred to as banishment beat because officers who have been in trouble are sent to these beats and this beat has little activity that can also have a negative impact on an officer's career advancement.  (Wiley Dep. I 68:8-11; 85:1-3).  Newer officers and officers with disciplinary problems are sent to 39 beat.  (Semsroth Dep. I 20:11-16; 21:12-19).

2.      Beat 39 is referred to as banishment beat because officers who have been in trouble are sent to these beats and this beat has little activity that can also have a negative impact on an officer's career advancement.  (Wiley Dep. 68:8-11; 85:1-3).  Newer officers and officers with disciplinary problems are sent to 39 beat.  (Semsroth Dep. I 20:11-16; 21:12-19).

3.      Within weeks after meeting with Susan Leiker to discuss discriminatory acts, Sergeant Watts told Semsroth that he had good news and bad news. Semsroth was sent to Beat 39 in retaliation for complaining to EEO and to "put her out there [Beat 39], [so] she won't have anything to complain about."  (Wiley Dep. 85:23-86:6; Semsroth Dep. I 19:18-19).

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

4.     In the summer of 2005. Sgt. Quick informed plaintiff that she received a position as a SRO at Hamilton Middle School. This was confirmed by Captain Nelson. (Warehime Dep. at 7:23-8:6; 10:1-24; 18:2-7; 23:22-25).   Warehime then filed an internal complaint.   Plaintiff turned her complaint into Sergeant Quick, the same Sergeant that informed her about receiving her position.   (Warehime Dep. 12:11-22; 21:22-25).   Defendant received the complaint made by Plaintiff Warehime on June 29, 2005 (Dep. Exhibit 2; Warehime Dep. 12:15-23).   This was an internal complaint for discrimination (Warehime Dep.  16:17-17:4).  The next morning Warehime was pulled into Captain Nelson's office and the job was taken away from her.  Captain Nelson informed Warehime that she could not have the Hamilton position. After being denied, Warehime pursued actions with the Fraternal Order of Police ("FOP") and eventually received the position that she was denied.  (Warehime Dep. at 7:23-8:6; 10:1-24; 18:2-7; 23:22-25; 25:7-12; 29:10-17)

5.     Warehime wants things to change in the Department. (Warehime Dep. 40:1-41:10).

6.     Semsroth experienced multiple acts of retaliation. (Semsroth Dep. II 5:20-24)

7.     Semsroth voluntarily went to visit the psychologist based on Lt. Bannister's recommendation. Bannister made the appointment for Semsroth.  (Semsroth Dep. II at 22:7-25). This visit was supposed to be to address PTSD that she had been experiencing.  (Semsroth Dep. II at 19:11-21:7).  However, once she was there, she learned that Lt. Bannister had informed the doctor that she was a plaintiff in a lawsuit and that the doctor was to conduct a fitness for duty test on Semsroth. (Semsroth Dep. II at 28:17-29:19; 30:6-22).

8.     A fitness for duty test primarily is ordered based on deficient performance. (Semsroth Dep. II at 47:4-12) Semsroth was hoodwinked into receiving a fitness for duty test.

9.     After meetings with Susan Leiker and others, Warehime doesn't believe that the Detective stole her idea. (Warehime 15:17;34:2-17)

10.     While the lawsuit was pending, Sara Voyles requested a light duty position.  She was told that that there was a position on the Sixth Floor in the juvenile section.  (Voyles Dep.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

25:24-27:10)However, she was told that she could not work anywhere on the floor because she had previously complained about a detective on the floor, but in a different department. (Voyles Dep. 25:24-27:10)

11.    Within days of filing the instant lawsuit, Officer Plush had three separate complaints initiated against her and referred to Professional Standards.  (Plush Dep. 15:16-25; 17:19-22).

## III.   Argument and Analysis

### A.  Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538-39 (10th Cir.1993).   A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52, 106 S.Ct. 2505.

Courts should be hesitant to grant summary judgment in cases where the intent of an actor is at issue.   As such, the court must draw all reasonable inferences in favor of the plaintiffs.  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 152, 120 S.Ct. 2097, 2111 (2000)("The court also failed to draw all reasonable inferences in favor of petitioner. For instance, while acknowledging "the potentially damning nature" of Chesnut's age-related comments, the court discounted them on the ground that they "were not made in the direct context of Reeves's termination.").  If there are doubts, these doubts must be resolved against the defendant. *Franklin v. Okla. City Abstract & Title Co.*, 584 F.2d 964, 969 (10th Cir. 1978). Although a party cannot survive summary judgment in hopes that evidence will appear at trial, it is important for the court to remember the function of cross examination in trials as cautioned

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

by the Tenth Circuit: "the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Luna v. City & County of Denver,* 948 F.2d 1144, 1148 (10th Cir. 1991) quoting *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." 151 *Liberty Lobby, supra,* at 255, 106 S.Ct. 2505.

### B.    Defendant Retaliated Against Plaintiffs

A plaintiff may meet the burden of establishing a case of retaliation either by relying on the *McDonnell Douglas* burden shifting method, by establishing discrimination directly, in which case the *McDonnell Douglas* framework is inapplicable, or by showing a mixed motive. *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973).  In *Fye v. Oklahoma Corp. Com'n*, 2008 WL 509371, *6 (10th Cir. 2008) the Tenth Circuit recently announced:

> A mixed-motive case is not established, and the *Price Waterhouse* framework does not apply, until the plaintiff presents evidence that directly shows that retaliation played a motivating part in the employment decision at issue. We have referred to this method of establishing retaliation as "the direct method," *see Medlock,* 164 F.3d at 550, but we emphasize that although some of our cases seem to suggest otherwise, we do not require "direct" evidence "in its sense as antonym of 'circumstantial.' " *See Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 181 (2d Cir.1992); *see also Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004) ("Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume.").

> Thus, a plaintiff can establish retaliation "directly" under *Price Waterhouse,* through the use of direct or circumstantial evidence.  In a mixed-motive case, the plaintiff must demonstrate "that the alleged retaliatory motive 'actually relate[s] to the question of discrimination in the *particular* employment decision' "and may do so through the production of either direct or circumstantial evidence. *Medlock,* 164 F.3d at 550 (quoting *Thomas v. Nat'l Football League Players Ass'n,* 131 F.3d 198, 203

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(D.C.Cir.1997)) (emphasis added) (alteration in original). Although circumstantial evidence is sufficient to establish that the employer was motivated by retaliatory animus, that circumstantial evidence must be tied "directly" to the retaliatory motive. *See Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1512 (10th Cir.1997) ("A plaintiff will be entitled to the burden-shifting analysis set out in *Price Waterhouse* upon presenting evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [retaliatory] attitude." (alteration in original) (quotations omitted)).

Thus, if there is circumstantial evidence that an employment action was in retaliation for engaging in protected activity, a plaintiff does not have to show that retaliation was the sole purpose of the action. In other words, a defendant could have both a legitimate and retaliatory reason for an act and still be liable under the *Price Waterhouse* theory. The Supreme Court clarified in *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (U.S. 2003) that a plaintiff is entitled to a mixed motive instruction if a plaintiff "present[s] sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a ***motivating factor*** for any employment practice" by either circumstantial evidence or direct evidence. *Id.* at 101-102. (emphasis added).

Although courts have not clearly set forth how *Desert Palace* changes any standards on summary judgment, it is clear that the classic *McDonnell Douglas* burden shifting paradigm is affected. Thus, under *McDonnell Douglas,* so long as the business presents a legitimate non-discriminatory reason a plaintiff is tasked to show that "the true motive for the employment decision violates [the statute]." *Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 247 (10th Cir.1993).

As the Third Circuit has stated:

The Court has made clear that 'mixed-motives' cases, such as the present one, are different from pretext cases such as *McDonnell Douglas* and *Burdine.* In pretext cases, 'the issue is whether either illegal or legal motives, but not both, were the "true" motives behind the decision.' *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 400 n. 5, 103 S.Ct. 2469,

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2473 n. 5 [76 L.Ed.2d 667] (1983). In mixed-motives cases, however, there is no one 'true' motive behind the decision.

*Miller v. CIGNA Corp.*, 47 F.3d 586, 601 (3rd Cir. 1995)(pre-*Desert Palace* decision). After *Price Waterhouse*, a plaintiff needs to only show that a motivating factor of the adverse employment action. Indeed, the court stated that when a plaintiff challenges an employment decision that may have been the product of a mixture of legitimate and illegitimate motives, *i.e.* mixed motives, the plaintiff need not fit into the *McDonnell Douglas* burden-shifting framework. *Id.* at 246-47. Rather, the Supreme Court held that once plaintiff shows that an improper motive played a motivating part in an employment decision, defendant may avoid liability if it proves that it would have made the same decision despite the improper motive. *Id.* at 244-45. Thus, on summary judgment, in applying a mixed motive paradigm, a plaintiff need not prove that an employer's proffered reason for the adverse decision is pretextual. An employer may satisfy its burden on the mixed-motive defense by presenting sufficient objective evidence from which the jury could reasonably conclude that the employee's job performance was so unsatisfactory that he would have been discharged even in the absence of an improper motive." *Johnson v. City of Tulsa*, 199 Fed.Appx. 677, 684, 2006 WL 2709647, 6 (10th Cir. 2006).

Therefore, under a mixed motive theory, a plaintiff is entitled to a jury trial if he or she meets a prima facie case of retaliation. Because the mixed motive instructions remove the "pretext" analysis at trial the "pretext" analysis is removed from the summary judgment analysis.[2] *See Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(holding that the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law).[3]

---

[2] Under *McDonnell Douglas*, even if there was a motivating factor of discrimination, so long as the legitimate reason advanced by a defendant is true, the defendant could escape liability.

[3] This issue is currently before the Tenth Circuit of Court of Appeals in *Semsroth v. City of Wichita*, 07-3155. Oral arguments were completed on January 24, 2008.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Retaliation is a separate offense under Title VII." *Meeks v. Computer Assocs.,* 15 F.3d 1013, 1021 (11th Cir.1994) (citing 42 U.S.C. § 2000e-3(a)). Title VII's anti-retaliation provision prohibits an employer from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice" by Title VII, including discrimination on the basis of race. 42 U.S.C. § 2000e-3(a). The goal of this provision is "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," including freedom from retaliation. *Burlington N. & Santa Fe R.R. Co. v. White,* 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). "An employee need not prove the underlying claim of discrimination for the retaliation claim to succeed." *Sullivan v. Nat'l R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999)(citations omitted).

In order to establish a prima facie case of retaliation, Plaintiffs must show that "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir.2006).

Prior to addressing the prima facie elements, it is important to note that Voyles does not have to rely on the pretext burden shifting because she was expressly told that the reason that she could not have the position was because she filed a lawsuit that named a supervisor.   This is direct evidence of retaliation.

Tenth Circuit defined direct evidence as:

> "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.' " *Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir.1999)(quoting *Black's Law Dictionary* 460 (6th ed.1990)), *overruled in part on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "Statements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination." *Heim v. State of Utah,* 8 F.3d 1541, 1546 (10th Cir.1993)(quoting *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990)). Thus, statements expressing a personal opinion, "even when reflecting a personal

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

bias or prejudice, do not constitute direct evidence of discrimination." *Shorter v. ICG Holdings, Inc.,* 188 F.3d at 1207.

*Mitchell v. City of Wichita, Kansas,* 140 Fed.Appx. 767, 778 (10th Cir. 2005). "While isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decision, a plaintiff can show such animus by demonstrating a nexus between the allegedly discriminatory statements and the defendant's decision to terminate the plaintiff." *Minshall v. McGraw Hill Broadcasting Company,* 323 F.3d 1273 (10th Cir. 2003) (internal citations omitted). *See also, Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1457 (10th Cir. 1994) (holding that a causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff).

Here, the reason provided to Voyles as to the reason why she could not get a position was because of act of filing a lawsuit that named a supervisor. This is a textbook example of a statement "demonstrating a nexus" between the protected opposition (filing a lawsuit naming a supervisor) and "the defendant's decision to" subject a plaintiff to an adverse action (prevention from assuming a desirable position). Therefore, Voyles is opted out of the pretextual analysis and is entitled to a jury trial.

### 1. Each plaintiff has engaged in protected opposition to discrimination

Greta Semsroth, Sara Voyles, and Kim Warehime have engaged in protected activity. First each plaintiff filed a federal lawsuit that is pending on appeal. *See* 04-1245-MLB and 07-3155. Additionally, while this 2004 case was pending each plaintiff filed a separate EEOC charges. (See Exhibits to Response to Motion for Sanctions). Moreover, Kim Warehime filed an internal charge of discrimination on June 29, 2005 to the same supervisor who previously informed her that she received the School Resource Officer Position. (Exhibit 2). Each of these acts constitutes protected activities. Indeed, individuals who have filed informal complaints to their supervisors. *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 716 n. 2 (11th Cir.2002); *Rodriguez v. Beechmont Bus Service, Inc.,* 173 F.Supp.2d 139, 150 (S.D.N.Y. 2001).

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues that plaintiff's Warehime's complaint was not true. (Def. Memo at 19) However, there is no such evidence that Warehime's complaint was not true.  Moreover, there is no evidence that Warehime knew her complaint to be false at the time that it was filed.  Her testimony was that she has no evidence that the Detective actually knew about her project.  This does not mean that she did not have a good faith belief that someone else had stolen her idea as she had been trying to get this idea picked up for a while.    Indeed, Warehime stated that the reason that she filed the complaint was because she was tired of women not getting an opportunity to pursue ideas, while males were. Thus, she made an internal sex discrimination complaint. (Exhibit 2, pp. 1, 4("This is the second time this week I have read in the paper that a male officer has proceeded with projects that I have suggested and have been turned down or put off"); Warehime 17:23-18:3)  The purpose of a complaint is so that an investigation can take place.  While purporting to proffer the proper good faith standard, the defendant is truly attempting to create a "reasonable cause" standard regarding complaints that form the basis of a retaliation complaint.  This is inappropriate and has no basis in the law.  There is absolutely no record that Warehime knew that she was filing a false complaint.  Thus, this argument fails.

### 2.    Plaintiffs suffered a challenged action that a reasonable employee would find materially adverse

A plaintiff must prove "that a reasonable employee would have found the challenged action materially adverse," *i.e.,* that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (citation and quotation marks omitted). The challenged action need not affect the terms and conditions of employment in order to constitute unlawful retaliation. *Id. at 2411-14*; *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 227 (2d Cir.2006). Instead, retaliation can be actionable even when the alleged adverse action "had not effected any change in [the employee's] salary, benefits, job title, grade, or hours of work[.]" *Kessler v. Westchester County Dept. of Social Servs.,* 461 F.3d 199, 201 (2d Cir.2006).

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The three acts complained of are (1) Kim Warehime was denied a position that was previously granted to her; (2) Greta Semsroth was given a fit for duty evaluation when she was supposed to be seen for emotional issues; and (3) Sara Voyles was told that there was a position that she could have on light duty, but then was told that she could not go there because there was someone on the same floor that had talked about her when she was present, despite the fact that it was a different section.[4]

Here, a reasonable juror could find "that a reasonable employee would have found the challenged action[s] [discussed above] materially adverse." *Burlington Northern, 126 S.Ct. at 2415*. In other words, a reasonable juror could find that these actions, particularly when considered collectively, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* That is all the plaintiffs must show in order to prove an adverse action. For instance, what employee would want to be subjected to a fit for duty exam simply because they need someone to talk to about seeing a man shot?  Especially given the fact, that a fitness for duty test is supposed to be ordered when there were issues with an officer's performance and there were no issues with Semsroth's performance.  What reasonable employee would want to be sent for a fit for duty test because they complain about discrimination? None.

In regards to Voyles, no reasonable employee would complain about a supervisor harassing them or make any other complaint if it will affect their position of choice.  Defendant makes factual arguments as to why Ms. Voyles' expectation was not reasonable.  In other words, defendant is invoking a subjective standard regarding reasonableness.  However, the Supreme Court in *Burlington* rejected this subjective view and stated quite clearly:

> The Court refers to a *reasonable* employee's reactions
> because the provision's standard for judging harm must be

---

[4] Defendant denies that many of these acts took place or deny the context in they occurred.  For instance, defendant contends that Lt. Bohannan did not call Semsroth, however the doctor informed Semsroth that he was told to do a fit for duty test and it was noted on her file.  These disagreements must be viewed in a light most favorable to plaintiff and assumed true.  At the very least, there is a serious question of fact regarding these acts.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

objective, and thus judicially administrable. The standard is phrased in general terms because the significance of any given act of retaliation may depend upon the particular circumstances. Pp. 2414-2416.

3. Applying the standard to the facts of this case, there was a sufficient evidentiary basis to support the jury's verdict on White's retaliation claim. Contrary to Burlington's claim, a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description. Almost every job category involves some duties that are less desirable than others. That is presumably why the EEOC has consistently recognized retaliatory work assignments as forbidden retaliation .

*Burlington Northern*, at 2407-2408.

As applied to Voyles, she was told that there was a position available for her. Then she was told that she could not have it because she filed a lawsuit that named a detective that would be on the same floor but a different division.  According to the defendant, an employee can be denied job assignments, even temporary ones because she was a victim and stood up for her rights.  This is not the law.  As the Supreme Court in *Burlington* held, one must review plaintiff's allegations objectively.  Why would Voyles have reason to believe that she couldn't go to the position when she was told that she could? She then went to discuss such with her supervisor and told her supervisor that she had the conversation.  However, the substance of these conversations are in dispute and not appropriate for resolution here.  Therefore, Voyles meets this element.

Lastly, and probably more clearly than the rest, no reasonable employee would lodge a complaint if a job would be taken from them the very next day. Surely if a reassignment, as in *Burlington*, constituted an adverse action, having a job taken away qualifies.  Defendant argues that this does not constitute an adverse action because Warehime was eventually provided the position.  Said another way, defendant argues that Warehime's position was simply delayed and a delay is not an adverse action.  This court need not reach the question as to whether a delay can equate to a materially adverse action as defendant's framing is incorrect.  Warehime was

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

given a job. She made a complaint.  She was told she couldn't have the job.  Defendant later told her she could have the job.  Simply because the defendant saw the error of its ways does not mean that it removes the sting from the adverse action of telling Warehime that she could not have the job the day after making a complaint.  In other words, would a reasonable employee be dissuaded from making a complaint if they knew that they would have a position taken away from them (even though they may get it later) if they made a complaint? The answer is yes and Warehime meets this prong.  All of the other arguments by defendant goes to weight, which is a question for the jury.   The plaintiffs can therefore state a *prima facie* claim of retaliation based on these actions.

### 3.      Casual Connection and or Pattern/Direct Evidence

"A retaliatory motive may be inferred when an adverse action closely follows protected activity.  However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) citing (*Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (emphasis in original)).

Defendant argues that plaintiffs Voyles and Semsroth cannot show a casual connection because their first lawsuit in July 2004 and the instances they faced occurred in 2005.  On its face, this argument seems attractive.  However, the problem with defendant's argument is that it overlooks the fact that the plaintiffs have alleged that they have been victims of a pattern of retaliation after making complaints and filing their previous lawsuit.  For instance, after this case was filed, one supervisor stated that he wished the "bitches would just die."  (Semsroth Dep. II 10:22-11:3)   Additionally, after Semsroth complained to EEO, she was sent to banishment beat so that she wouldn't complain.  Although Plaintiff Plush's claims have been dismissed because she is unavailable, her incidents are nonetheless relevant to this court's inquiry.  Within days after filing this action, there were three separate disciplinary actions filed against her.  After Kim Warehime made a complaint, a job was pulled from her.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Because there is a pattern of retaliation, a casual connection need not be established. Indeed, this form of evidence is appropriate when a plaintiff cannot show temporal proximity. Absent "unusually suggestive" temporal proximity, the plaintiff can infer a retaliatory motive using circumstantial evidence to establish a "pattern of antagonism" or "retaliatory animus" in the intervening time period between the protected activity and the adverse action. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir.2000). *See also Sprint/United Management Co. v. Mendelsohn,* --- S.Ct. ---, 2008 WL 495370, *6 (2008)("The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.").[5] Thus, the court can consider multiple retaliatory acts occurring during the "time period between the protected activity and the adverse action. Therefore, plaintiffs Semsroth and Voyles are able to proceed.

Because plaintiffs have met their prima facie elements, defendant's excuses are material under plaintiffs' proposal because meeting a prima facie case meets plaintiffs' burden to show that the decision made against them were motivating factors. Nonetheless, plaintiffs can still show that defendant's excuses for the treatment suffered by plaintiffs are pretextual.

### i. **Defendant's Explanations are Pretextual**

This Circuit and others have stated that summary judgment is not ordinarily appropriate for determining issues of intent or motivation. *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1393, n. 12 (10th Cir.1988). *See also S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298-1299 (9th Cir.1982). Additionally, the Eight Circuit has also stated that summary judgment should rarely be granted in employment discrimination cases because the issue of intent is a factual determination. *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1034-35 (8th Cir.2005). Moreover the elements established in *McDonnell Douglas* were "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the

---

[5] Defendant does not argue that Warehime would fail to meet the casual connection. She was told that the position was taken away one day after lodging the complaint.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

evidence in light of common experience as it bears on the critical question of discrimination."
*Furnco, supra,* 438 U.S., at 577, 98 S.Ct., at 2949. Similarly the United States Supreme Court,
in *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716-717 (1983) stated:

> All courts have recognized that the question ***facing triers of
> fact*** in discrimination cases is both sensitive and difficult.
> The prohibitions against discrimination contained in the
> Civil Rights Act of 1964 reflect an important national
> policy. There will seldom be "eyewitness" testimony as to
> the employer's mental processes. But none of this means
> that trial courts or reviewing courts should treat
> discrimination differently from other ultimate questions of
> fact. Nor should they make their inquiry even more difficult
> by applying legal rules which were devised to govern "the
> allocation of burdens and order of presentation of proof,"
> *Burdine, supra,* at 252, 101 S.Ct., at 1093, in deciding this
> ultimate question. The law often obliges finders of fact to
> inquire into a person's state of mind. As Lord Justice
> Bowen said in treating this problem in an action for
> misrepresentation nearly a century ago:
>
> > "The state of a man's mind is as much a fact
> > as the state of his digestion. It is true that it
> > is very difficult to prove what the state of a
> > man's mind at a particular time is, but if it
> > can be ascertained it is as much as fact as
> > anything else." *Eddington v. Fitzmaurice,* 29
> > Ch.Div. 459, 483 (1885).

(emphasis added).[6]

    In addition to the questions of intent, the nature of a jury trial shows that employment
discrimination cases should normally be heard by a jury after they have a chance to view the
credibility of witnesses. The court in *Hicks,* 509 U.S. 502, 509-510, held that the pretextual
analysis of the *McDonnell Douglas* framework requires a credibility determination. There are
several intangibles and other factors that can only be addressed by a jury. For instance, a

---

[6] Again, *Aikens* was a pre-1991 case where the court was the fact finder. This analysis applies to
juries in cases that originate post-1991.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

witness at trial can testify inconsistent with his or her deposition testimony.[7]  At the summary

judgment stage, a judge cannot consider the demeanor and body language of a witness who

testifies, or how the decision maker responds on cross examination.  *Williams v. Bowen,* 844

F.2d 748, 755, (10th Cir.1988)("The opportunity to observe the demeanor of a witness . . .  is

invaluable, and should not be discarded lightly.")

Similarly a judge cannot weigh the credibility of witnesses.  Just because an excuse is

arguable on paper doesn't mean that a jury will buy the position as juries are instructed to use

their collective wisdom and common sense.  *Kanatser v. Chrysler Corp.*, 199 F.2d 610,

620 (10th Cir. 1952)(upholding jury instruction that instructed jury that they were not bound by

a learned professional's opinion and were to "determine the facts from all the testimony, in the

light of their common sense.").  Summary judgment motions do not have the benefit of opening

statements or closing arguments with unanswered rhetorical questions.  In short, the large part

of the persuasive process associated with showing the lack of credibility and addressing a

person's intention must occur at trial. Indeed, the Notes of Advisory Committee on 1963

Amendments to Rules (Subdivision (e)) provide:

> Nor is the amendment designed to affect the ordinary standards applicable to the
> summary judgment motion. So, for example:
>
> ***Where an issue as to a material fact cannot be resolved without
> observation of the demeanor of witnesses in order to evaluate
> their credibility, summary judgment is not appropriate.***

(emphasis added).

The Tenth Circuit has acknowledged that the pretextual phase requires a credibility

determination. *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1310 (10th Cir. 2005).

Because most discrimination cases will come down to whether the jury believes an employers

---

[7] Depositions are no substitute for live cross examination as depositions are primarily used to
lock a person into a statement and under normal circumstances, the deponent can only be
deposed one time.  See F.R.C.P. 33.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

explanation over the evidence presented by plaintiffs, a court cannot make a credibility determination at the summary judgment phase.

Additionally, the Supreme Court has stated that "[t]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the "plaintiff [has] his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Thus, the burden shifting method should not be used to keep plaintiffs out of court: it should be used to ensure that plaintiffs are able to get into court.

Pretext can be shown "either directly by persuading the court that discriminatory reasons more than likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Beck v. Quiktrip Corp.*, 708 F.2d 532, 535 (10th Cir.1983). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Martin v. AT&T Corp.*, 331 F.Supp.2d 1274, 1291 (D.Col. 2004) quoting *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir.2002). Evidence relevant to such a showing may include: (1) the employer's prior treatment of plaintiff; (2) the employer's "general policy and practice with respect to minority employment," particularly statistics reflecting a general pattern and practice of discrimination; (3) disturbing procedural irregularities; and (4) the use of subjective criteria. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n. 11 (10th Cir.2003)(internal quotes omitted)("disturbing procedural irregularities, including deviations from normal company procedure, provide support for a plaintiff's assertion of pretext."). This list is not meant to be exclusive, but is merely illustrative of methods by which pretext may be shown. *See Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir.) *cert. denied* 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984). Pretext is also indicated in situations where the sincerity of the employer's belief is undercut by the unreasonableness of the belief; thus the defendant need not be taken at its word. *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2002).

Defendant argues that Warehime cannot show pretext regards the "non-retaliatory reason for delaying Warehime's transfer to a position as a School Resource Officer at Hamilton Middle School in Patrol South." (Doc. 85 at 21) However, a "delay" is not the challenged action. The challenged action is the fact that she was given a position and the day after giving a complaint to her supervisor, the position was stripped away. This is not a delay and the defendant does not acknowledge that Warehime was given the position and then took it away, thus it has not articulated a non-discriminatory reason as to why the position was taken away the day after lodging a complaint. Thus, Warehime's claims unquestionably move forward.[8]

Defendant states that Semsroth cannot show pretext because she was suffering from post traumatic stress. (Doc. 85 at 17-18). Defendant postulates that even if the supervisor instructed the doctor to provide a fitness for duty test, it was appropriate under the circumstances. However, this argument is not believable for three reasons. First, a fitness for duty test is supposed to be ordered when there were performance issues with an employee. Defendant does not claim that Semsroth's performance was suffering because of the stress associated with trauma experienced at the job. Thus, defendant's proffered reason that a fitness for duty test was ordered because of emotional stress is not true.

Second, defendant has a policy to deal with situations where officers experience trauma while at work. (Exhibit 1). "The purpose of this procedure to provide a guideline to assist members of the Department involved in job-related actions which could produce stress related after effects, i.e., line-of-duty shootings, death, suicide…" (Exhibit 1 at pg. 1). Absent from this policy is any authority to provide a fitness for duty exam for experiencing trauma on the duty. This policy was to be followed when an officer experiences on the job trauma. It was not and the failure to follow a policy is a court accepted form of pretext. The weight (or how strong) of pretext is not a question for the court, but for the fact finder.

---

[8] The only reason that this claim is not appropriate for summary judgment in favor of the plaintiff is because defendant disagrees that Warehime was given the job in the first place.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Third, Semsroth's doctor was told that Semsroth was one of the females that filed the lawsuit.  In other words, the supervisor told the doctor about Semsroth engaging in a protected activity (filing the lawsuit) and also told him to provide a fitness for duty exam (challenged act).  What legitimate purpose did the supervisor have in telling the doctor about the lawsuit?  None.  A reasonable jury can realize that this action of the supervisor was just another link in the chain of retaliation that these ladies have faced.  Therefore, Semsroth's claims survive summary judgment.

Defendant proffers that it prevented Voyles from receiving the position on the sixth floor because her supervisor wanted to keep her in Field Services, which was short-handed.  (Doc. 85 at 22).  Plaintiff cannot rebut this statement directly because it may be true that the supervisor wanted to keep her in Field Services.  However, there is another express reason provided: because Voyles filed a complaint against a supervisor on the same floor and different division.  This is where the mixed motive paradigm becomes important.  Right now, the court is looking at two proffered reasons as to why an adverse decision was taken.  There are two principles to guide this court. First the court, has to review all evidence in a light most favorable to the non-moving party.  Second, *expressio unius est exclusio alterius* is helpful.  Voyles states that she was told that she could not go to the sixth floor because she made a complaint.  There was no evidence that she was told anything about Field Services being shorthanded.  By informing Voyles of one reason and excluding the other, it is reasonable to infer that the recently proffered reason is just not true.  Therefore, when there are questions of fact and two reasons provided, the pendulum swings in favor of the plaintiff as a reasonable juror could believe Voyles' account and not defendant's.

Therefore, summary judgment is inappropriate on each plaintiff's claim.

## IV.   CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment must be denied.

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,


s/Lawrence Williamson, Jr.
Lawrence W. Williamson, Jr.  #21282
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:  (913) 535-0736
E: l.williamson@williamsonfirm.com


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE


I hereby certify that on March 10, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Kelly Rundell

*Attorneys for Defendant*


s/ Lawrence W. Williamson Jr.

---

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT