## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**GRETA SEMSROTH, et al.,**

                        **Plaintiffs,**

                                              **CIVIL ACTION**

**v.**

                                          **No. 06-2376-KHV-DJW**

**CITY OF WICHITA,**

                        **Defendant.**

### MEMORANDUM AND ORDER

Pending before the Court is defendant's Second Motion for Protective Order (doc. 77). Defendant seeks a protective order relieving it of the obligation to respond to plaintiffs' Second Set of Interrogatories.

### I.      Background Facts

This is a Title VII case in which plaintiffs claim they were retaliated against in the terms and conditions of their employment for engaging in protected activity. Plaintiffs Semsroth, Voyles, Warehime, and Plush[1] were, at all relevant times, commissioned police officers in the Wichita Police Department.

Plaintiffs served a collective First Set of Interrogatories ("First Set") on defendant on October 2, 2007. Defendant fully responded to those interrogatories in a timely manner. On November 1, 2007, plaintiffs served a collective Second Set of Interrogatories ("Second Set")[2] on defendant.

---

[1]On December 27, 2007, the Court issued a written order (doc. 78) granting defendant's Motions for Sanctions and dismissed with prejudice all claims of plaintiff Plush. Thus, only three plaintiffs—Semsroth, Voyles, and Warehime—remain in the case.

[2]Plaintiffs inadvertently denominated their Second Set as their "First Set."

Defendant contends that the First Set far exceeded the maximum number of interrogatories allowed by the Scheduling Order.  Defendant seeks a protective order relieving it of the obligation to respond to the additional interrogatories propounded in plaintiffs' Second Set.

## II.     Applicable Standards

The parties agree that defendant will be entitled to a protective order relieving it of the obligation to respond to Plaintiffs' Second Set if plaintiffs' First Set did in fact exceed the allowable number of interrogatories.  They also agree that if the maximum number of interrogatories was not reached until the Second Set was served, a protective order would be appropriate with respect to those interrogatories in the Second Set that exceed the maximum.

Two basic principles control the Court's determination of how many interrogatories plaintiffs have served.  The first principle relates to the maximum number of interrogatories that may be served in this case, as prescribed in the Scheduling Order.  The Scheduling Order in this case provides that "[n]o party shall serve more than 30 interrogatories, including all discrete subparts, to any other party."[3]

The second principle relates to how subparts or subparagraphs of an interrogatory are to be counted.  Federal Rule of Civil Procedure 33(a), by its express terms, makes it clear that each numbered interrogatory and any of its "discrete subparts," are to be counted as separate interrogatories and counted toward the numerical limit of interrogatories that may be served.[4]

---

[3]June 1, 2007 Scheduling Order (doc. 27),¶ 2.d.

[4]The version of Rule 33(a) in effect at the time the interrogatories were served stated as follows:  "Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number *including all discrete subparts*, to be answered by the party served." (Emphasis added.)  Effective December 1, 2007, Rule 33(a) was revised to
(continued...)

Rule 33(a) does not define the term "discrete subparts," and courts have struggled to interpret the term's meaning. In *Williams v. Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas*,[5] this Court addressed how subparts are figured into calculating the number of interrogatories:

> Interrogatories often contain subparts. Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory. On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.[6]

Notably, the Advisory Committee addressed this issue in amending Rule 33 in 1993 and provided the following guidance as to when subparts should count as separate interrogatories:

> Each party . . . must secure leave of court (or a stipulation from the opposing party) to serve a larger number [than that allowed by the court]. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.[7]

---

[4](...continued)
make stylistic changes; however, the substance of the Rule remains the same. The Court notes that although both versions of Rule 33(a) provide that a party may serve only 25 interrogatories on any other party, both versions also state that the number may be increased by order of the court or written stipulation. Consequently, the Court's Scheduling Order limitation of 30, rather the Rule's limitation of 25, controls here.

[5]192 F.R.D. 698 (D. Kan. 2000).

[6]*Id*. at 701.

[7]*Johnson v. Kraft Foods N. Am., Inc*., No. 05-2093-JWL-DJW, 2006 WL 3143930, at *1 (D. Kan. Oct. 31, 2006) (quoting Advisory Committee Note, 146 F.R.D. 401, 675-76 (Fed. 1993)).

In light of the foregoing, this Court has observed that an interrogatory containing subparts directed at eliciting details concerning a "common theme" should generally be considered a single interrogatory.[8]  Other courts have described the rule in a similar manner, holding that interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within, and necessarily related to, the primary question.[9]  On the other hand, an interrogatory that contains subparts which inquire into discrete areas or separate subjects should, in most cases, be counted as more than one interrogatory.[10]

## III.    Analysis

The Court must first decide whether plaintiffs' First Set exceeded the maximum number of interrogatories that plaintiffs were allowed to serve.  If the First Set exceeded the limit, defendant is entitled to a protective order relieving it of the obligation to respond to plaintiffs' Second Set.  If the First Set did not exceed the limit, then the Court must examine the interrogatories contained in the Second Set and determine whether plaintiffs have exceeded their limit with that set.

### A.    Determining the Number of Interrogatories When They Are Served Collectively

Before the Court proceeds to determine the number of interrogatories contained in plaintiff's First Set, the Court must first determine how to construe the Scheduling Order limitation of thirty

---

[8]*Johnson,* 2006 WL 3143930, at *2; *Swackhammer v. Sprint Corp. PCS,* 225 F.R.D. 658, 664 (D. Kan. 2004); *Williams*, 192 F.R.D. at 701; *see also* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, §2168.1 at 261 (2d ed. 1994).

[9]*Talevski v. Carter*, No. 2: 05 CV 184, 2007 WL 1797634, at *5 (N.D. Ind. June 18, 2007) (citations omitted); *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (citations omitted); *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997); *see also* Wright, et al., *supra* note 8.

[10]*Johnson,* 2006 WL 3143930, at *2; *Swackhammer*, 225 F.R.D. at 664-64*; Williams*, 192 F.R.D. at 701; *see also* Wright, et al., *supra* note 8.

interrogatories per party when, as here, the case involves multiple plaintiffs who collectively serve a set of interrogatories. Defendant argues that "[w]hen four plaintiffs submit the same question, each plaintiff has submitted one of the 30 allotted interrogatories."[11] Thus, defendant maintains that when the four plaintiffs in this case collectively served their First Set, *each* of the plaintiffs served that number of interrogatories. For example, if the Court concludes that plaintiffs' First Set consists of 60 interrogatories, then *each plaintiff* is deemed to have propounded 60 interrogatories, which would exceed the maximum of 30 allowed each Plaintiff.

Plaintiffs, on the other hand, argue that the maximum of 30 interrogatories per plaintiff should be totaled to determine the maximum number that *the group* of plaintiffs may serve collectively. As the Scheduling Order states that each plaintiff may serve up to 30 interrogatories, plaintiffs contend that, as a group of four, they were allowed to serve a total of 120 interrogatories. Using the same example above, if the Court determines that plaintiffs' First Set consists of 60 interrogatories, then the 120 maximum was not reached with the First Set, and the four plaintiffs (at least prior to Plush being dismissed) could serve 60 more interrogatories as a group.

The Court finds neither defendant's nor plaintiffs' position to be persuasive. Neither side presents any case law to support its position, and the Court is unaware of any decisions on this particular point. In the absence of any applicable case law, the Court believes that the Scheduling Order's limitation should be given a common sense reading. Thus, in construing the limitation that "[n]o party shall serve more than 30 interrogatories, including all discrete subparts, to any other party," the Court will apply the following rules. In a case involving multiple plaintiffs and one defendant, *each* plaintiff may serve up to 30 interrogatories upon the defendant. When the plaintiffs

---

[11]Def.'s Second Mot. for Protective Order (doc. 77), at 2.

serve a set of interrogatories collectively, i.e., as a group, the maximum number they may serve is determined by multiplying the number of plaintiffs times the *individual* maximum, but only so long as each interrogatory relates to the case as a whole  and not to a particular plaintiff or plaintiffs. (Such an interrogatory will be referred to as a "general" interrogatory.)  A group of four plaintiffs may serve a total of 120 general interrogatories, and it is not necessary for the Court to allocate a particular interrogatory to a particular plaintiff.

A different rule, however, must apply when the set of interrogatories contains not only general interrogatories but interrogatories directed at one or more particular plaintiffs.  (An interrogatory of this type will be referred to as a "plaintiff-specific" interrogatory.)  In such a case, the Court must allocate the *plaintiff-specific* interrogatories to each particular plaintiff to which they apply.  The Court, of course, must also account for the general interrogatories.  To do this, the Court will count each general interrogatory towards each plaintiff's individual limit (in this case, 30). Then, for each plaintiff, the Court should add the number of *plaintiff-specific* interrogatories allocated to a particular plaintiff to the number of *general* interrogatories allocated to that particular plaintiff, and the sum will be the *total* number of interrogatories allocated to that particular plaintiff. The Court will then be able to determine whether a particular plaintiff has exceeded his/her interrogatory limit.

**B.**      **The First Set**

*1.      Counting the various subparts in the First Set*

The Court must now determine how the various subparagraphs of plaintiffs' First Set should be counted.  That is, should each subpart be counted as part of the interrogatory under which it is set out, or should each subpart be counted as its own, separate interrogatory?  Although there are

only 11 numbered interrogatories in the First Set, many of them contain numerous subparagraphs. Defendant argues that many of the subparagraphs should be deemed  separate interrogatories because they do not pertain to a common theme within the numbered interrogatory.  Defendant asserts that the 11 numbered interrogatories should be deemed to be at least 120 separate interrogatories or as many as 1,506 separate interrogatories—with the large difference attributable to how Interrogatory  No. 7 is construed.[12]

Plaintiffs, on the other hand, argue that the subparagraphs of each numbered interrogatory are subsumed within, and relate to, their respective numbered interrogatories.  Although plaintiffs do not separately analyze each subpart and each numbered interrogatory as defendant does, plaintiffs assert that the number of interrogatories they have propounded  is "well under" the total number of interrogatories they were allowed to serve.[13]

The Court believes that defendant is applying the rule regarding subparts too broadly.  The Court finds that Interrogatories No. 3-11 each consist of one interrogatory.  Although many of them contains subparts, most of the subparts relate to a common, general theme.  The Court does, however, agree with defendant that Interrogatory No. 1 consists of three separate interrogatories because there is no common theme or link between the three subparts.[14]  The Court also agrees with

---

[12]Defendant argues that at the least, Interrogatory No. 7 consists of 16 separate interrogatories, or, at the most, 1,401 separate interrogatories.

[13]Plaintiffs incorrectly state that each plaintiff may serve a maximum of 25 interrogatories. Apparently, plaintiffs rely on Fed. R. Civ. P. 33(a), which refers to a maximum of 25, instead of relying on the Scheduling Order provision that allows for a maximum of 30.

[14]Interrogatory No. 1 asks defendant to (a) identify recruitment methods for each job category in each department; (b) identify the individuals responsible for recruitment of new employees; and (3) identify "restrictions on type of recruitment desired" by age, race, gender or sexual identity, physical appearance, and physical ability.

defendant that Interrogatory No. 2 consists of nine separate interrogatories because the nine subparts of that interrogatory seek information about such varied topics that they do not form a common theme.[15]

In light of the above, the Court finds that plaintiffs' First Set consists of 21 separate interrogatories. That determination, however, does not end the Court's inquiry, as the Court must also determine how the interrogatories should be allocated to each particular plaintiff.

> 2.    *Allocating the interrogatories in the First Set to each plaintiff*

As noted above, each plaintiff was allowed to serve a maximum of 30 interrogatories on defendant. The First Set consists of both general and plaintiff-specific interrogatories. Consequently, the Court must use the rule discussed above that applies when both "plaintiff-specific" and "general" interrogatories are served by plaintiffs as a group.

Here, Interrogatories No. 1-5 and No. 7 are general interrogatories, and the total number of questions contained therein must be allocated to each plaintiff. The Court also deems Interrogatory No. 6, which asks for information about "each instance that each plaintiff was investigated and/or disciplined," to be a general interrogatory as it applies equally to each plaintiff. The remaining interrogatories are plaintiff-specific. Interrogatory No. 8, which asks for information relating only to Semsroth, is "plaintiff-specific" as to Semsroth and should therefore be allocated only to her and count towards her limit of 30. Interrogatory No. 9, which asks for information about the particular allegations of Semsroth, Voyles, and Warehime, is also plaintiff-specific, and should be allocated to Semsroth, Voyles, and Warehime and counted towards each of their individual limits of 30.

---

[15]Although Interrogatory No. 2 seeks information about "job vacancies," it asks for such varied information as "a description of job vacancies during previous five years" and "the geographic area from which defendant draws job applicants."

Finally, Interrogatories No. 10 and 11, which ask for information relating only to Plush, should be allocated only to Plush, and each will count towards her limit of 30.

Here, in summary form, are the Court's determinations as to how each interrogatory should be counted and allocated:

- **Interrogatory No. 1** consists of 3 general interrogatories and will be allocated to each of the 4 plaintiffs.            .

- **Interrogatory No. 2** consists of 9 general interrogatories and will be allocated each of the 4 plaintiffs.

- **Interrogatory No. 3** consists of 1 interrogatory and  and will be allocated to each of the 4 plaintiffs.

- **Interrogatory No. 4** consists of 1 general interrogatory and will be allocated to each of the 4 plaintiffs.

- **Interrogatory No. 5** consists of 1 general interrogatory and will be allocated to each of the 4 plaintiffs.

- **Interrogatory No. 6** consists of 1 general interrogatory[16] and will be allocated to each of the 4 plaintiffs.

- **Interrogatory No. 7** consists of 1 general interrogatory and will be allocated to each of the 4 plaintiffs.

- **Interrogatory No. 8** consists of 1 interrogatory.  As it applies only to Semsroth, it is plaintiff-specific and will be allocated to Semsroth.

- **Interrogatory No. 9** consists of 1 interrogatory.  As it asks for information relating to each of Semsroth, Voyles, and Warehime, it is plaintiff-specific as to each of them, and 1 interrogatory will be allocated to Semsroth, 1 to Voyles, and 1 to Warehime.

- **Interrogatory No. 10** consists of 1 interrogatory.  As it applies to Plush only, it is plaintiff-specific and will be allocated to Plush.

---

[16]Interrogatory No. 6 asks defendant to provide certain information for every instance that each plaintiff was investigated or disciplined, such as the date of the incident, the date a report was made, the policy that was allegedly violated, and defendant's reason for initiating the investigation.

- **Interrogatory No. 11** consists of 1 interrogatory.  As it applies to Plush only, it is plaintiff-specific and will be allocated to Plush.

In light of the above, 2 plaintiff-specific interrogatories will be allocated to Semsroth; 1 plaintiff-specific interrogatory allocated to Voyles; 1 plaintiff-specific interrogatory allocated to Warehime; and 2 plaintiff-specific interrogatories allocated to Plush.

There are a total of 17 general interrogatories.  17 interrogatories will therefore be allocated to each of the 4 plaintiffs.

Adding the number of plaintiff-specific and general interrogatories allocated to each plaintiff, the numbers are as follows for the First Set:  a total of 19 interrogatories are allocated to Semsroth; a total of 18 interrogatories are allocated to Voyles; a total of 18 interrogatories are allocated to Warehime; and a total of 19 interrogatories are allocated to Plush.  Clearly then, in serving the First Set, none of the plaintiffs exceeded her limit of 30 interrogatories.

## C.    The Second Set

Having determined that none of the plaintiffs exceeded the limit with the First Set, the Court must now turn its attention to the Second Set, which was served on defendant on November 1, 2007. As noted above, plaintiff Plush was dismissed from this case on December 27, 2007.  Thus, the Court need not consider those interrogatories that relate to Plush.[17]  The Court's inquiry will be limited to determining whether the three plaintiffs who remain in the case, i.e., Semsroth, Voyles and Warehime, have exceeded their individual limits in serving their Second Set.

---

[17]This means the Court will not consider Second Interrogatories No. 15 and 16, which relate to Plush's alleged misconduct and complaints made against her.

*1.      Counting the various subparts in the Second Set*

The Second Set consists of 24 numbered interrogatories.  None contains any subparagraphs.
Defendant, however, contends that the instructions included with the Second Set cause a number of
the interrogatories to consist of multiple questions.  For example, one of the instructions provides
that the term "identify," when used in reference to a person, means to state the person's name,
address, telephone number, present employer, and grade or title.  Another instruction provides that
when the term "identify" is used in reference to a document, it means to describe the document by
date, subject matter, and author; identify each addressee and any person who dictated, signed or
participated in its creation; and provide the name and address of the present custodian.  The
instructions also provide that when the term "identify" or "describe" is used in reference to an event
or occurrence, that means to describe the event; give the date of the event; to identify the persons
who participated in and/or witnessed the event and those present when the event occurred; and
identify documents that discuss or comment upon the event.

The Court does not agree that these instructions automatically convert a single question into
multiple interrogatories.  For example, these instructions do not convert Second Interrogatory No.
24, which asks defendant to "[i]dentify all principle facts and documents that support any contention
that any of plaintiffs' allegations are barred by the statutes of limitations" into multiple
interrogatories, as defendant contends.  Even when the above instruction regarding "identifying" a
document is incorporated into the question, Second Interrogatory No. 24 still pertains to the common
theme of what principle facts and documents support defendant's allegation that one or more of
plaintiffs' claims are barred by the statute of limitations.

11

Even taking into account plaintiff's instructions, the Court finds that each numbered interrogatory in the Second Set is a single interrogatory.

### 2. *Allocating the interrogatories in the Second Set to each plaintiff*

Applying the rules set out above, the Court finds that the Second Set consists of both general and plaintiff-specific interrogatories. Second Interrogatories No. 11-14, 17-22, and 24 are general interrogatories, and the single questions contained in each one of those interrogatories will be allocated to each of the remaining three plaintiffs. The remaining interrogatories are plaintiff-specific because they seek specific information about particular plaintiffs, and they will be allocated on a plaintiff-by-plaintiff basis.

The Court finds that plaintiffs' Second Set should be counted and allocated as follows:

- **Second Interrogatory No. 1** consists of 1 interrogatory. As it applies only to Semsroth, it is plaintiff-specific and will be allocated to Semsroth.

- **Second Interrogatory No. 2** consists of 1 interrogatory. As it applies only to Semsroth, it is plaintiff-specific and will be allocated to Semsroth.

- **Second Interrogatory No. 3** consists of 1 interrogatory. As it applies only to Semsroth, it is plaintiff-specific and will be allocated to Semsroth.

- **Second Interrogatory No. 4** consists of 1 interrogatory. As it applies only to Semsroth, it is plaintiff-specific and will be allocated to Semsroth.

- **Second Interrogatory No. 5** consists of 1 interrogatory and relates to fitness for duty tests. Although it does not expressly refer to Semsroth, it applies only to Semsroth, as she is the only plaintiff who asserts a claim relating to a fitness for duty test.[18] Thus, this interrogatory is specific to Semsroth and will be allocated to her.

---

[18]In the Pretrial Order, Semsroth sets forth the following contentions: "Plaintiff Semsroth was required to submit to a fitness for duty exam because she had previously complained of discriminatory conduct. A fitness for duty exam is supposed to only be ordered when an officer has a deficient performance record. Semsroth did not have such a record." Pretrial Order (doc. 82),¶5(a).

(continued...)

- **Second Interrogatory No. 6** also relates to fitness for duty tests.  It consists of 1 interrogatory.  It is specific to Semsroth and will be allocated to her.

- **Second Interrogatory No. 7** consists of 1 interrogatory.  As it applies only to Warehime, it is plaintiff-specific and will be allocated to Warehime.

- **Second Interrogatory No. 8** consists of 1 interrogatory.  As it applies only to Warehime, it is plaintiff-specific and will be allocated to Warehime.

- **Second Interrogatory No. 9** consists of 1 interrogatory.  As it applies only to Warehime, it is plaintiff-specific and will be allocated to Warehime.

- **Second Interrogatory No. 10** consists of 1 interrogatory.  As it applies only to Warehime, it is plaintiff-specific and will be allocated to Warehime.

- **Second Interrogatory No. 11** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 12** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 13** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 14** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 17** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 18** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 19** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 20** consists of 1 general interrogatory and will be allocated to each of  the 3 remaining plaintiffs.

---

[18](...continued)

- **Second Interrogatory No. 21** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 22** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

- **Second Interrogatory No. 23** consists of 1 interrogatory.  As it applies only to Warehime it will be allocated to Warehime.

- **Second Interrogatory No. 24** consists of 1 general interrogatory and will be allocated to each of the 3 remaining plaintiffs.

In light of the foregoing, 6 plaintiff-specific interrogatories will be allocated to Semsroth; no plaintiff-specific interrogatories will be allocated to Voyles; and 5 plaintiff-specific interrogatories  will be allocated to Warehime.

There are a total of 11 general interrogatories in the Second Set.  That number will be allocated to each of the three remaining plaintiffs.  Adding the number of plaintiff-specific and general interrogatories allocated to each plaintiff, the numbers as to the Second Set are as follows: a total of 17 interrogatories are allocated to Semsroth; a total of 11 interrogatories are allocated to Voyles; and a total of 16 interrogatories are allocated to Warehime.

### D.    Total Number of Interrogatories

Adding the number of interrogatories in the First Set to the number of interrogatories in the Second Set, the Court finds that a total of 36 interrogatories should be allocated to Semsroth, 29 allocated to Voyles, and 34 allocated to Warehime.  It is not necessary at this point in time to determine the number of interrogatories allocated to Plush, as she was dismissed from the case on December 27, 2007, and defendant need not answer those particular interrogatories.

## IV.      Conclusion

The maximum number of interrogatories that each plaintiff may serve is 30.  Voyles did not exceed her limit with the service of the Second Set.  However, both Semsroth and Warehime did exceed theirs — Semsroth by 6 and Warehime by 4.

In light of the above, Defendant is not entitled to a protective order with respect to Voyles, and Defendant is required to answer Interrogatories No. 11-14, 17-22, and 24 of the Second Set. Defendant shall serve its responses to those interrogatories within **<u>twenty (20) days</u>** of the date of this Order.  With respect to Semsroth and Warehime, Defendant is entitled to a protective order, and it is relieved of the obligation to respond to the Second Set as they pertain to Semsroth and Warehime.  Each of those two plaintiffs may, however, choose which interrogatories from that Second Set that they wish to resubmit to Defendant so they do not exceed their individual maximum of 30 interrogatories.  As Semsroth served 19 with the First Set, Semsroth is limited to resubmitting no more than 11 interrogatories from the Second Set.  As Voyles served 18 with the First Set, Voyles is limited to resubmitting no more than 12 interrogatories from the Second Set.  Semsroth and Voyles shall resubmit their interrogatories within **<u>five (5) days</u>** of the date of this Order. Defendant shall serve its responses o those interrogatories within **<u>twenty (20) days</u>** of their service.

## IV.      Attorneys' Fees and Expenses

Neither party has  requested an award of fees or expenses in connection with this motion. The Court must nevertheless consider whether to make such an award.

Federal Rule of Civil Procedure 26(c)(3), which governs protective orders, provides that Rule 37(a)(5) applies to any award of fees and expenses related to a motion for protective order.

The Court must therefore examine Rule 37(a)(5) to determine whether fees and expenses should be awarded here.

Subsection (C) of Rule 37(a)(5) applies when the motion for protective order is granted in part and denied in part.  It provides that after giving the parties "an opportunity to be heard," the court may "apportion the reasonable expenses for the motion."[19]

Given the dearth of case law regarding how interrogatories are to be counted and allocated to a particular party, the Court believes that reasonable attorneys could differ as to how the maximum number of interrogatories should be calculated in this case.  The Court will therefore decline to award either party any fees or expenses.  Accordingly, each party shall bear her/its own fees and expenses incurred in connection with this motion

**IT IS THEREFORE ORDERED** that defendant's Second Motion for Protective Order (doc. 66) is denied as to plaintiff Voyles, and defendant shall serve its responses to Interrogatories No. 11-14, 17-22, and 24 of the Second Set within **twenty (20) days** of the date of this Order.

**IT IS FURTHER ORDERED** that defendant's Second Motion for Protective Order (doc. 66) is granted as to plaintiffs Semsroth and Warehime.  Semsroth shall, within **five (5) days** of the date of this Order, select no more than 11 interrogatories from the Second Set and re-serve those on defendant.  Voyles shall, within **five (5) days** of the date of this Order, select no more than 12 interrogatories from the Second Set and re-serve those on defendant. Defendant shall serve its responses to these interrogatories within **twenty (20) days** of their service.

**IT IS FURTHER ORDERED** that each party shall bear her/its own fees and expenses incurred in connection with defendant's Second Motion for Protective Order.

---

[19]Fed. R. Civ. P. 37(a)(5)(C).

16

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas on this 28th day of April 2008.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:     All counsel and *pro se* parties